# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-1332V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MARLENA and       \*
JEFFREY LLOYD,       \*
as parents and natural guardians of C.L.,    \*
a minor,       \*
      \*
     Petitioners,       \*
      \*
     v.       \*
      \*
SECRETARY OF HEALTH AND       \*
HUMAN SERVICES,       \*
      \*
     Respondent.       \*
      \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Chief Special Master Corcoran

Filed:  June 9, 2026

*Ronald Homer,* Conway Homer P.C.*,* Boston, MA, for Petitioners.

*Alec Saxe,* U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION GRANTING IN PART FINAL AWARD OF ATTORNEY'S FEES AND COSTS[1]

On May 6, 2021, Marlena and Jeffrey Lloyd, on behalf of their minor child, C.L., filed this action seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petition (ECF No. 1) ("Pet.") at 1. Petitioners alleged that C.L. developed transverse myelitis ("TM") due to the diphtheria/tetanus/acellular pertussis ("DTaP"), haemophilus influenzae B ("Hib"), inactivated poliovirus ("IPV"), pneumococcal conjugate ("PCV"), and rotavirus vaccines she received on October 7, 2020. Pet. at 1. A one-day entitlement hearing was held in Washington, D.C., on January 16, 2025. Based upon my review of the record

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 State. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references will be to § 300aa of the Act (but will omit that statutory prefix).

and consideration of the hearing testimony, including expert input, I denied entitlement. Decision, dated Sep. 29, 2025 (ECF No. 89).

Petitioners have now filed a motion for a final award of fees and costs, for the work of attorneys at the Conway, Homer, P.C., law firm. Motion, dated Apr. 14, 2026 (ECF No. 93) ("Final Fees Mot."). Petitioners request a total of $275,065.25—reflecting $169,869.60 in  fees, plus $105,195.65 in costs. Final Fees Mot. at 1–2. Petitioners did not accrue any personal costs throughout this matter. Respondent reacted to the fees request on April 24, 2026. *See* Response, dated Apr. 24, 2026 (ECF No. 95) ("Resp."). Respondent is satisfied that the statutory requirements for an award of fees and costs are met in this case, but defers the calculation of the amount to be awarded to my discretion. Resp. at 2–4. Petitioners did not file a reply.

For the reasons set forth below, I hereby **GRANT IN PART** Petitioners' motion, awarding fees and costs in the total amount of **$274,686.55**.

## ANALYSIS

## I.    Petitioner's Claim had a Reasonable Basis

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely.

A claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the claim—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can "lose" reasonable basis over time.

2

The standard for finding the existence of reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs*., 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs*., 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs*., 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs*., 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).

Although Petitioners' claim was ultimately unsuccessful, I find that there was more than a sufficient objective basis to entitle them to a fees and costs award. The record established that C.L. experienced a variety of symptoms after the relevant covered vaccines, and Petitioners proposed a viable causation theory as well. In addition, TM is an oft-litigated vaccine adverse event. Thus, a final award of fees and costs in this matter is permissible, and there are no other grounds for denying fees in this case.

## II.    Calculation of Fees

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her various attorneys, based on the years work was performed:

**Conway, Homer, P.C.**

| | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 |
|---|---|---|---|---|---|---|
| **Meredith Daniels (Attorney)** | $350.00 | $410.00 | $455.00 | $485.00 | $516.00 | $557.00 |
| **Ronald Homer (Attorney)** | $447.00 | $475.00 | $500.00 | $525.00 | $567.00 | $612.00 |
| **Christina Ciampolilo (Attorney)** | N/A | $425.00 | N/A | N/A | $537.00 | $580.00 |
| **Nathaniel Enos (Attorney)** | $230.00 | N/A | $320.00 | $360.00 | $390.00 | N/A |
| **Joseph Pepper (Attorney)** | N/A | N/A | $455.00 | N/A | $516.00 | N/A |
| **Patrick Kelly (Attorney)** | N/A | $250.00 | $305.00 | $345.00 | $380.00 | N/A |
| **Paralegals** | $155.00 | $170.00 | $185.00 | $195.00 | $207.00 | $223.00 |
| **Law Clerks** | N/A | N/A | N/A | $200.00 | N/A | N/A |

ECF No. 93 at 54.

The attorneys at Conway, Homer, P.C. practice in Boston, MA—a jurisdiction that has been deemed "in forum." Accordingly, they should be paid at forum rates, as established in *McCulloch*. *See Lozano v. Sec'y of Health & Hum. Servs.*, No. 15-396V, 2020 WL 7869439, at *3 (Fed. Cl. Spec. Mstr. Nov. 30, 2020). The rates requested are consistent with what has previously been awarded for the work of these attorneys, in accordance with the Office of Special Masters' fee schedule, and I shall grant them herein.[3] *See Ross v. Sec'y of Health & Hum. Servs.,* No. 22-

---

[3] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules (last visited on Apr. 21, 2026).

136V, slip op. at 4–5 (Fed. Cl. Spec. Mstr. May 6, 2026); *Guzman v. Sec'y of Health & Hum. Servs.*, No. 22-957V, 2025 WL 1891419, at *3 (Fed. Cl. Spec. Mstr. June 9, 2025); *Jackman v. Sec'y of Health & Hum. Servs.*, No. 21-685V, 2025 WL 2659100 (Fed. Cl. Spec. Mstr. Aug. 13, 2025). And the time spent on this matter was reasonable as well.

### III.   Calculation of Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $105,195.65 in outstanding costs, including the filing fee, medical record retrieval costs, mailing costs, travel costs, and costs associated with expert Daniel Bonthius, M.D. Final Fees Mot. at 85. Documentation was provided for the Court's filing fee, medical records requests, copying expenses, travel costs, and mailing expenses, thus I grant these costs in full. I discuss the remaining expenses below.

#### A.  *Petitioner's General Litigation and Trial Costs*

Petitioner's counsel requested reimbursement for certain overhead expenses, such as office equipment. ECF No. 93 at 51–53. But these are non-compensable in the Vaccine Program. *See Rodriguez v. Sec'y of Health & Hum. Servs.*, No. 06-559V, 2009 WL 2568468, at *23 (Fed. Cl. Spec. Mstr. July 27, 2009). And costs specifically associated with purchasing journals is not compensable either. *See id.* (finding that a National Law Journal Subscription was an overhead expense and not compensable). Therefore, I deny the costs of the medical journal and flash drives, which results in a reduction of **$378.70**.[4]

#### B.  *Petitioner's Expert Costs*

Dr. Bonthius is a board-certified pediatric neurologist, with a Ph.D. in neuroscience. Curriculum Vitae, dated May 31, 2023, filed as Ex. 15 (ECF No. 40-2). He has worked for close to thirty years as a professor, and he continues to practice and serve as the Chief of the Division of Child Neurology at Levine Children's Hospital in North Carolina. *Id.* at 3. Dr. Bonthius has participated as an expert in the Program a handful of times in the past few years. Based on his

---

[4] *See* Cost ID 1031097; 1031138; 1127982–87; 1128348. ECF No. 93 at 51–53.

experience, Dr. Bonthius is requesting reimbursement of $90,900.00 for 86.75 hours of work at a rate of $600.00 per hour. ECF No. 93 at 52–53, 85–86, 89–90, 141–42. Dr. Bonthius submitted three expert reports in this matter and testified at the hearing. *See id.* Dr. Bonthius did reduce his time by half for the hours he spent traveling to the hearing. *See id.* at 141–42.

The hourly rate requested for Dr. Bonthius is a bit high, despite his overall demonstrated expertise. Only recently did I grant a $600.00 per hour rate for an expert—an individual who has participated in the Program for years. *Nguyen v. Sec'y of Health & Hum. Servs.,* No. 22-765, slip op. at 7 (Fed. Cl. Spec. Mstr. Mar. 26, 2026). However, Dr. Bonthius has been awarded the requested hourly rate previously by another special master. *Maynard v. Sec'y of Health & Hum. Servs.,* No. 20-768V, 2023 WL 7332805, at *4 (Fed. Cl. Spec. Mstr. Oct. 4, 2023). And the Vaccine Program must not permanently condemn experts to consistently lower rates than they could command in other fora, and take into account the need for increases (commensurate with the increases they allow attorneys). Thus, I will adopt the $600.00 rate, and I make no other revisions to his time spent on this matter.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of an interim fees award, I **GRANT IN PART** Petitioner's Motion for an Award of Attorney's Fees and Costs. **I award a total of $274,686.55 (reflecting $169,869.60 in fees, and $104,816.95 in costs) to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement.** In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of this Decision.[5]

**IT IS SO ORDERED**.

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.